Department of Property and Supplies, Appellant, *v.* Rhoads.

Argued May 26, 1954. Before STERN, C. J., STEARNE, JONES, CHIDSEY and MUSMANNO, JJ.

*Arthur H. Hull,* Special Deputy Attorney General, with him *Phil H. Lewis,* Deputy Attorney General, *Frank F. Truscott,* Attorney General, *Spencer G. Hall,* City Solicitor and *James S. Bowman,* Assistant City Solicitor, for appellants.

*Paul H. Rhoads,* with him *Walter W. Shearer* and *Rhoads, Sinon & Reader,* for appellee.

*William S. Bailey,* with him *John B. Pearson* and *Storey, Bailey & Rupp,* for appellee.

OPINION PER CURIAM, September 27, 1954:

These appeals by the Commonwealth, acting by the Department of Property and Supplies, and the City of Harrisburg arise out of the condemnation of properties of the several appellees in the widening of Forster Street in Harrisburg.

The issues raised have been thoroughly litigated below and there now remains but the single question whether the appropriations were made under the Capitol Park Extension Act of June 3, 1943, P. L. 818, or under the State Highway Law of June 1, 1945, P. L. 1242, as implemented by The Third Class City Code of June 28, 1951, P. L. 662. Upon the answer to that question depends whether the properties were taken not later than January 29, 1945, in an exercise of the power of the Department of Property and Supplies under the Capitol Park Extension Act or on July 16, 1952, the date of the Governor's approval of the Highway Department's plan for the widening of Forster Street as filed and recorded in the Highway Department. The relative significance of the two dates lies in the fact that the fair market value of the properties was admittedly higher at the later date.

The question was raised in the court below on exceptions by the Department of Property and Supplies and by the City of Harrisburg to the several reports of the Board of Viewers on the respective properties involved. In their reports, the Viewers concluded as a matter of law that the Department of Property and Supplies had not condemned the properties under the provisions of the Capitol Park Extension Act of 1943; that the Department of Highways of the Commonwealth had condemned them, under the provisions of the Highway Law of 1945 on July 16, 1952, the date the Governor approved the plans for the widening of Forster Street; and that the City of Harrisburg, by virtue of the Highway Law and the Third Class City Code, became liable for the payment of all damages incident to the widening of Forster Street.

The Viewers accordingly made awards of damages to the several property owners from which neither the Commonwealth nor the City of Harrisburg ever appealed. These awards, by lapse of time without appeal therefrom, have long since become final as liabilities of the City of Harrisburg. The Department of Property and Supplies and the City have contented themselves with their appeals to this court from the orders of the court below dismissing the exceptions to the Viewers' reports. It would be pointless now to consider what the situation of the appellants might have been, in the light of the final awards, had we found that their exceptions to the Viewers' reports were well taken.

The learned court below entered separate orders dismissing the appellants' exceptions to the Viewers' reports, accompanied in each instance by a clear, well-reasoned and thorough opinion by Judge NEELY, from which we quote the following (taken from the opinion

filed at No. 663 September Term, 1952) whereon we affirm each of the orders so entered.

"In our view, it is important to bear in mind that the Act of 1943 is not a condemnation statute in the sense that it appropriates 'in praesenti' the property of the landowners in the area. . . .

\* \* \*

". . . We believe that to construe the Capitol Park Extension Act as authorizing the condemnation of all properties in the Park Extension area by virtue of the acquisition [by purchase of a] single property on January 29, 1945, notwithstanding there was no money immediately available to pay for [all the other] properties, would be to cast doubt upon the constitutionality of the statute. [See Article I, Section 10, and Article XVI, Section 8, of the Pennsylvania Constitution.]

\* \* \*

"In order to conclude that the taking of [these] properties was in January 1945 by the Department of Property and Supplies, we would be obliged to disregard the express provisions of the Act of 1919, the Administrative Code of 1929 and the requirements of the very section of the Act of 1943 invoked by the Commonwealth in this case. Such a conclusion would also require us to hold that the provisions of the State Highway Law and the Third Class City Code relating to the assessment of damages by viewers are inapplicable. This we feel we have no right to do. On the contrary, our conclusion is that there was no taking on January 29, 1945, as contended by the Commonwealth, and that therefore §208 of the State Highway Law is applicable, and the time of taking must be determined under the provisions of this latter statute.

\* \* \*

"The clear and express language used in §208 of the State Highway Law, 36 PS Pkt. Parts 670-208, must prevail. That section expressly states that the 'taking shall be deemed to occur only' when the right of way plans have been approved by the Secretary of Highways and by the Governor and filed as a public record in the office of the Department of Highways. These things were all done, as found by the viewers, as of July 16, 1952.

"Since the date of taking is the only issue before us, and since the State Highway Law clearly provides what that date is, we therefore conclude that the taking of the properties . . . was on July 16, 1952 under the provisions of the State Highway Law of June 1, 1945, P. L. 1242, 36 PS Pkt. Parts 670-101 et seq. The viewers were correct in their conclusion that the taking was on that date and that the value of the properties is to be determined as of that date."

The orders are affirmed at the appellants' costs.